And we'll move on to our fifth case today. Case number 1635-68, Mendoza v. Sessions. Thank you. May it please the Court, Mike Rayfield on behalf of the petitioner L. Macias Mendoza. Shortly before Mr. Macias was removed to Mexico in 1995, his five-year-old son was hit by a car and suffered a serious brain injury. Although Mr. Macias' removal period had not yet expired, he felt compelled to approach a border inspection point in Texas and attempted to make his case to the two officers sitting on duty. But then something unusual happened. Neither of the officers actually questioned him at the border. One just said, welcome home, and the other simply allowed him to pass through into the United States without any comment. Mr. Macias then lived in the United States with his family for another 21 years. Then last year, in 2016, the government attempted to reinstate Mr. Macias' prior order of removal. And we think that that's improper for three main reasons. First, binding regulations preclude reinstatement of removal where the noncitizen was, quote, into the United States. That's a bit of an overstatement. So you're on. The regulations don't preclude that. The regulations set forth evidentiary items that the immigration officer is authorized to consider. Well, I think the regulations... It doesn't put a thumb on the scale about what the outcome should be. Well, I think the regulations are a little bit clearer than that. I think... And just to quote the regulation, this is HCFR 241.8. It says, quote, in establishing whether an alien is subject to this section, in other words, whether it's subject to the provisions governing reinstatement, the immigration officer shall determine three things, including, quote, whether the alien unlawfully reentered the United States. And then the regulation goes on and says, in making that determination, quote, the immigration officer shall attempt to verify an alien's claim, if any, that he or she was lawfully admitted. So the inquiry under the regulation, we think, really boils down to whether the alien was lawfully admitted. That position basically means or is the same as arguing that the regulation redefined illegal reentry as lawfully admitted. I don't think that's what the regulation is doing. I think the statute... That's what your argument entails. That's why I suggested it's an over-reading of the regulation. It basically is a reading of the regulation that redefines the statutory term, which can't possibly be right. I don't think it's clarifying what the statute is already saying. The statute... There's nothing ambiguous about the statute. I think that the statute uses the term reentered the United States illegally, but it doesn't clarify what kind of illegality it's referring to. And there's a longstanding distinction in immigration law between substantive illegality and procedural illegality. For purposes of adjustment of status, not for purposes of reinstatement of a prior order of removal. Well, it's never been applied in that context, but the concept of an illegal reentry into the United States for purposes of adjustment of status, in those cases the courts have drawn the distinction between a procedurally regular entry and a substantively lawful entry. And the question is whether those... Right. That's a different context. Here we're talking about an illegal reentry following an order of removal. It's a very different context. Right. And there's no... And there are no cases that... Well, there are no cases from this Court that directly speak to the question of what that provision means. But I think the statute is certainly... How can reentry be unlawful for the criminal statute, but lawful for the purposes of the reinstatement statute? Actually, well, that's a good question. And I think actually the criminal statute is provide... It shows what Congress is... What Congress does when it wants to sweep in these very broad categories of entries. I think Your Honor is referring to 8 U.S.C. 1326, which provides... That's A. I'm sorry? Yeah. Yes. 1326. Which... I'm sorry. 1326A. Correct. Which provides any alien who enters, attempts to enter, or is at any time found in the United States shall be fined, imprisoned not more than two years, or both. So that is obviously a statute that's referring to any kind of entry. If Congress had wanted to permit reinstatement for all categories of entry after a prior order of removal, it could have said so. Or it could have said any entry where you haven't received the requisite permission from the Attorney General. But using the term illegal doesn't necessarily speak to that distinction. And I think a very good example of that is 8 U.S.C. Section 1101, which provides the definition of admission. And that statute provides, quote, the terms admission and admitted mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer. So here you have Congress specifically linking the concept of an admission with the concept of a lawful entry. And so whether the Congress... And we know from the BIA's cases, but specifically a matter of Quilanton, that admission in that context refers to a procedurally regular entry. So what you have is Congress linking the concept of lawfulness, and it could have said illegal too, but it used lawful rather than legal, which I think probably has the same meaning. But what you have in 1101 is Congress linking the concept of lawfulness to the concept of an admission, which has long been interpreted to denote procedural regularity. And like I said, in matter of Quilanton, the BIA's case in 2010, you had a very similar set of facts. You had... Well, not really, because the petitioner here comes to the court in a completely different context. He's already been previously removed from the United States. And the testimony of the 10th Circuit found that in that context, substantive legality is required, not just procedural regularity. The 10th Circuit pointed out that if procedural regularity were sufficient for a previously removed alien to lawfully re-enter, then the entry would be lawful under the restatement, the reinstatement statute, but unlawful under the criminal statute that provides penalty for those who are found in the United States after previously having been removed. Sure. And we acknowledge that the 10th Circuit's decision is contrary to ours, is contrary to our position here. We acknowledge that in our brief. But I think that it's not necessarily inconsistent for Congress to impose criminal penalties on one category of entry, but it preclude reinstatement in the same category of entry. Because when an alien is subject to a criminal prosecution under 8 U.S.C. 1326, the alien is given a host of procedural protections required by the Due Process Clause. The reinstatement statute is an extraordinarily truncated procedure that a number of courts have found to be very close to the constitutional line. And I think Congress could have legitimately distinguished between entries that it would consider illegal for the purposes of 1326, but not warranting this kind of truncated reinstatement procedure. And I'd like to reserve the remainder of my time unless there are other questions. That's fine. Thank you. Mr. Moss. May it please the Court, Benjamin Mark Moss for the Respondent, the Attorney General. The Court should uphold ICE's reinstatement of Masias's removal order because as this court's factually indistinguishable case Cordova-Soto 2 makes clear, a previously removed alien can't just engage in unlawful self-help and try your luck to sneak back. And thus, an alien who does that has violated Section 1182A9A. And so reinstatement is proper for three reasons which I will briefly summarize. First, the statute's plain language indicates that a substantively illegal reentry is indeed an illegal reentry. Second, this court's precedents have acknowledged that common sense plain language reading. And third is perhaps the most important reason is that a contrary ruling by this court would incentivize aliens who are facing reinstatement to say, oh wait, I was waived in without any record having been made. And of course, it's difficult to prove a negative for the government. And so such a reading would frustrate with this court recognized in Tapielimos as Congress's plain intent to expedite the removal of aliens who, having been removed, then go on to violate our laws again by reentering without the Attorney General's advanced consent. Now, why would Regulation 241.8 direct the immigration officer to consider all relevant evidence including statements made by the alien and any evidence in the alien's possession, end quote, if the only way to be lawfully admitted is with the permission of the Attorney General? Why not just look at the government's database and be done? Is there a way to read that regulation that is consistent with your reading of the reinstatement statute? Yes there is, Judge Rovner. The government reads that regulation and that reading is entitled to deference if the court considers it to be a reasonable reading as providing process instructions to what the immigration officer is required to look at. Council referred to curtailed procedures, and this regulation is designed to provide careful consideration of all relevant evidence about whether somebody might have affected a lawful reentry. And so to specifically get to Your Honor's question about why ask the alien, well, imagine a scenario where the rules require filing a form. It happens to be Form I-212. That's the form that you file in order to request the Attorney General's advanced consent. But imagine a scenario where there's a mix-up. The form got lost in the mail. There's a dispute about whether the form was ever received. So it just makes good sense for the government to say, hey, wait, in addition to checking our databases as the regulations require and as the agency did here, let's make sure we ask the alien if there's anything that we should be looking at that might show that the reentry was in fact illegal as opposed to an illegal reentry. And so that's exactly what the regulation is designed to do. That's a reasonable reading of the regulation. And that regulation, that interpretation, for one thing, is owed our deference under this court's Joseph case. And further, the agency has also issued a reinterpretation of the regulation in the reinstatement statute, as we did mention briefly in our 28E letter that we filed last week. So as to the plain language, the Tenth Circuit, as the court has noted, addressed this factually indistinguishable case and concluded that in very similar circumstances, the reentry was illegal because it was substantively This court, in the Cordova-Soto 2 case, acknowledged no fewer than nine times, either using the word illegal or a synonym, that that kind of a reentry is indeed an illegal reentry for reinstatement purposes. This court conducted analysis, applied the law to the facts, and that is a holding. And that is something that this court is obligated to follow. So this court is not drawing a blank slate. Unless we change our mind. Certainly, Your Honor, unless you change your mind. But we think there are good reasons not to change your mind. So that's for the plain language and the precedence. And let me just touch briefly one more time on the importance of the consequences of today's possible ruling that the court is being asked to decide here. Imagine what aliens could do if all they had to do was allege that they were waived in. All of a sudden, you've got a really great way to attack a reinstatement case. That's really going to cripple the reinstatement regime. And it would be demonstrably at odds with Congress's plain intention. So unless the court doesn't... How often do you think someone, there's a fact scenario like here, where they said, welcome back and come on in. How often do you think that happens? So I think, Your Honor, they're actually kind of, it's a two-part answer because this type of scenario may have been more common in the past, in the 90s and earlier, before 9-11, before various tightenings of the immigration enforcement. Including the recent presidential election, but go ahead. Indeed, Your Honor. And so back in the day, as it were, and Your Honor, I see, please go ahead. I don't mean to cut you off. I think she's referring to you. No, I'm talking about my beloved friend up there. In any event, Your Honor, back in the day, when the border was a little bit more porous than it is today, this type of thing could have happened. And here, the agency assumed without deciding that that's what happened. But currently, this scenario is less likely to occur today, but there still is this policy issue because people, all they have to do is say, oh, I reentered a long time ago. So eventually, the cases will potentially graduate out of the system, but in the meantime, there are perhaps decades of cases that would seize upon a ruling that says, oh, there's a difference between substance and procedure. Which just, by the way, Key Lantan is not the only board decision that addresses substance procedure. That case doesn't apply, but there are other board decisions that also don't apply that happen to find that substantive illegality matters. But those cases just really aren't on point. They don't interpret this statute, and this statute's language is plain. So for those reasons, we ask the court to uphold ICE's reasonable interpretation of its statute and regulation, and conclude that Macias' reentry into the United States was an illegal one because it was in violation of the law in 82, and thus, it was an illegal reentry for reinstatement purposes. Thank you. Thank you. Mr. Rayfield, you've got two minutes left. Thank you, Mark. Just a few brief points. We think that if the statute were entirely clear, if it was clear what it meant by an illegal reentry, there would be absolutely no point in having this regulation which refers specifically to the term lawfully admitted, and which the government has long interpreted to refer to a procedurally regular entry. I think the government refers to it as a process instruction, but what would the point be of going through that procedure if it didn't actually bear on the question of whether reinstatement was proper? So I think Judge Roedner hit the point on nail on the head, which is this procedure would be meaningless if the government were correct, the statute were plain. And then I just wanted to briefly address Cordova Soda 2. That case was about, the only issue in that case was whether the petitioner could reopen a prior proceeding where a reinstatement order had already been entered and upheld by the Tenth Circuit. The meaning of the reinstatement statute or the regulation were not before this court in that case. And then finally, on the point about the supposed implications that this would have in other cases, the government had no obligation to credit Mr. Macias' story in the course of reinstating his prior order of removal. It chose to take that story as a given and make a legal determination on the reinstatement provision. So the government is free in other cases not to do the same thing, but in this case there's been never anything in the record to call Mr. Macias' account into question. And so I would just close by saying that we're asking for very limited relief here. We're not asking for the court to rule on Mr. Macias' removability or rule on whether he's entitled to any relief from removal. All we're asking for is a traditional proceeding to determine whether he should be removed from the country where he's lived almost his entire life and where his entire family lives. So we would ask the court to grant the petition for review. Thank you. Thank you. Our thanks to both counsel. The case is taken under advisement.